Argued and submitted October 16, affirmed December 26, 1991, reconsideration
denied April 15, petition for review denied May 26, 1992 (313 Or 300)

STATE OF OREGON,
*Respondent,*

*v.*

JAMES TAYLOR RATHBONE, III,
*Appellant.*

(90-CR-0372; CA A68586)

823 P2d 430

Michael D. Jeske, Grants Pass, argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant challenges his sentence imposed pursuant to a plea agreement. Although we have jurisdiction, ORS 138.050, we conclude that his claim of error may not be reviewed on direct appeal and affirm.

On May 29, 1990, defendant was arrested and charged with manufacture of a controlled substance, methamphetamine; possession of a controlled substance, methamphetamine; and possession of a controlled substance, hashish. ORS 475.992. The indictment alleged that defendant's activities were part of a manufacture or delivery scheme or network. Defendant demurred to that allegation on the ground that the language is unconstitutionally vague. Before argument on his demurrer or trial on those charges, he was arrested a second time on December 22, 1990, and charged with 14 felony counts, including delivery of a controlled substance, possession of a controlled substance, racketeering and perjury. *See State v. Rathbone II*, 110 Or App 419, 823 P2d 432 (1991). That indictment also charged that the crimes were pursuant to a scheme or network.

During the second arrest, the officers found firearms. The district attorney threatened to refer the matter to federal authorities for prosecution under a federal law that prohibits a person under state felony indictment from possessing firearms. The federal penalties on conviction are mandatory and significantly more severe than Oregon penalties. The district attorney offered not to make the referral if defendant pled guilty to the state charges. He accepted the offer and, on December 27, 1990, pled guilty, in both cases, to all charges that had not been dismissed. He was sentenced on January 24, 1991. At sentencing, the court classified defendant's convictions for manufacture of a controlled substance as category 8, according to the guidelines classification for scheme and network convictions. On February 6, 1991, we held that the "scheme and network" language violates Article I, sections 20 and 21, of the Oregon Constitution. *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dismissed* 312 Or 76, 815 P2d 201 (1991).

Defendant specifically notes that he is not seeking to have his convictions "set aside." He acknowledges that

scheme or network crimes were in category 8 on the crime seriousness scale at the time of his plea.[1] Nonetheless, he argues that, in the light of *Moeller*, the sentencing court erred by ranking his crime at 8. OAR 253-04-002(3); OAR ch 253, App 4.

Defendant's argument requires us to determine the scope of our review of a sentence imposed under the guidelines under a plea agreement. ORS 138.222(2)(d) provides that there is no review of

"[a]ny sentence resulting from an agreement between the state and the defendant which the sentencing court approves on the record."

The sentencing guidelines contain specific provisions governing plea agreements. ORS 135.407.[2] Under ORS

---

[1] ORS 138.222(4)(b) provides review of the classification of the crime seriousness rank or the classification of a prior conviction. Defendant agrees that the crimes to which he pled guilty were correctly classified as category 8.

[2] ORS 135.407 provides:

"In cases arising from felonies committed on or after November 1, 1989:

"(1) Whenever a plea agreement is presented to the sentencing judge, the defendant's criminal history classification, as set forth in the rules of the State Sentencing Guidelines Board, shall be accurately represented to the trial judge in the plea agreement. If a controversy exists as to whether a prior conviction or juvenile adjudication should be included in the defendant's criminal history, or as to its classification under rules of the State Sentencing Guidelines Board, the district attorney and the defendant may stipulate to the inclusion, exclusion or classification of the conviction or adjudication as part of the plea agreement subject to the approval of the court.

"(2) The district attorney and the defendant may stipulate to the grid block classification within the sentencing guidelines grid established by the rules of the State Sentencing Guidelines Board that will provide the presumptive sentence range for the offender. The sentencing judge may accept the stipulated classification and impose the presumptive sentence provided in the rules of the State Sentencing Guidelines Board for that grid block.

"(3) If the district attorney and the defendant stipulate to a grid block classification within the sentencing guidelines grid, and the sentencing judge accepts the stipulated classification but imposes a sentence other than the presumptive sentence provided by rules of the State Sentencing Guidelines Board, the sentence is a departure sentence and is subject to rules of the State Sentencing Guideline Board related to departures.

"(4) The district attorney and defendant may stipulate to a specific sentence within the presumptive range provided by rules of the State Sentencing Guidelines Board for the stipulated offender classification. If the sentencing judge accepts the plea agreement, the judge shall impose the stipulated sentence.

"(5) The district attorney and the defendant may stipulate to a sentence outside the presumptive sentence range for a stipulated grid block classification.

138.222(4)(a), we may review a claim that the sentencing court "failed to comply with requirements of law" in imposing sentence. We conclude that, when read together, ORS 135.407, ORS 138.222(2)(d) and ORS 138.222(4)(a) limit our review on direct appeal of sentences imposed as part of a plea agreement solely to the question of whether the sentencing court complied with the requirements of ORS 135.407. Defendant does not make that claim here.

To allow review of defendant's sentence under ORS 138.222(4)(a), when the requirements of ORS 135.407 have been satisfied, would effectively nullify the prohibition in ORS 138.222(2)(d) against review of sentences imposed pursuant to a plea agreement. We cannot act as if the legislature nullified that prohibition in the same section of the same legislation that enacted it. *State v. Cook*, 108 Or App 576, 580, 816 P2d 697 (1991). The legislature did not intend that a defendant could avoid the consequences of his decision to enter into a plea agreement, which would be the result here if defendant were to prevail.

The drafters of the guidelines recognized that plea agreements are an important part of the criminal justice system. Commentary, *Oregon Sentencing Guidelines Implementation Manual* 72 (1989). The advantages of plea bargaining inure, not only to prosecutors, but also to defendants. Defendant demurred to the "scheme or network" language that enhanced the seriousness of his crime from 4 to 8. He chose not to pursue his demurrer but, instead, to plead guilty to crimes classified as category 8 crimes in order to assure that charges would not be referred to the federal system, where he faced mandatory severe penalties.

Affirmed.

---

The sentencing judge may accept an agreement for an optional probationary sentence or a departure sentence as provided in rules of the State Sentencing Guidelines Board."